```
              IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF ARKANSAS
                    FAYETTEVILLE DIVISION
```

DEBRA K. BAKER                                    PLAINTIFF


        v.                    Civil No. 07-5048


THE PROCTER & GAMBLE
COMPANY, LLC                                      DEFENDANT


## ORDER

NOW on this the 13th day of February 2008, comes on for consideration Defendant's **Motion for Summary Judgment** (document #14) and Plaintiff's response thereto.    The Court, having reviewed the pleadings of the parties, and all other matters of relevance before it, and being well and sufficiently advised, finds and orders as follows:

1.   On March 19, 2007, Plaintiff Debra Baker (hereinafter "Plaintiff") commenced this action against Defendant The Procter & Gamble Company, LLC (hereinafter "Defendant"), seeking relief from Defendant's alleged violation of the Arkansas Civil Rights Act ("ACRA").    Plaintiff asserts that Defendant intentionally violated her right to hold employment without discrimination because of her mental disability in violation of Arkansas Code § 16-123-107.  Specifically, Plaintiff claims that Defendant failed

1

to offer a reasonable accommodation for her disability and, as a result, she was forced to resign to avoid termination.

Defendant now moves for summary judgment. Plaintiff has responded in opposition to this motion.

2. The standard to be applied to a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure and provides for the entry of summary judgment on a claim if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Carroll v. Pfeffer, 262 F.3d 847 (8th Cir. 2001); Barge v. Anheuser-Busch, Inc., 87 F.3d 256 (8th Cir. 1996). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Accordingly, all evidence must be viewed in the light "most favorable to the non-moving party." F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir. 1997); see also Bailey v. United States Postal Service, 208 F.3d 652, 654 (8th Cir. 2000).

2

Where a movant makes and properly supports a motion for summary judgment, the opposing party may not rest upon the allegations or denials of its pleadings; rather, the non-movant must "set forth specific facts showing that there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 256.  The non-moving party must "make a sufficient showing on every essential element of its case for which it has the burden of proof at trial."  Wilson v. Southwestern Bell Tel. Co., 55 F.3d 399, 405 (8th Cir. 1995).

3.    The following facts are undisputed, except where otherwise noted:

* Plaintiff began work for Defendant in 1997.  She worked in Defendant's marketing department in a receipting role until January 10, 2005.

* While employed in the receipting position, Plaintiff began training for the marketing operations specialist position with Shannon Isaac, one of Defendant's marketing operations specialists.

* In January 2005, Plaintiff's receipting position was eliminated for economic reasons and her duties were transferred to another position in Defendant's finance department.

* On January 10, 2005, Julie Walker, Defendant's Global Director of Marketing, and Kelly Kochvar, Defendant's Human

3

Resource Manager, informed Plaintiff of the elimination of her position and her reassignment to the marketing operations specialist role – the position for which Plaintiff had been training with Shannon Isaac.

* Plaintiff had concerns that she was not ready to work in this position, as it required more technical skills than her prior job.  She shared her concerns with Julie Walker and Kelly Kochvar during the January 10th meeting.  Walker also was concerned that Plaintiff lacked the skills necessary to succeed in this new position.  However, as Plaintiff's receipting job was eliminated and there were currently no other lateral positions available in the marketing department, this was the only position available to Plaintiff at the time.

* Shortly after the January 10th meeting, Plaintiff experienced a nervous breakdown and began suffering from clinical depression and an anxiety disorder.  According to Plaintiff, her nervous breakdown was a direct result of the January 10th meeting and, in particular, certain alleged actions by Julie Walker. Specifically, in the complaint, Plaintiff states that she had a nervous breakdown "because of harassment she received from her supervisor [Julie Walker]." Doc. 1-2 at 6.

4

* On January 14, 2005, as a result of her clinical depression and anxiety disorder, Plaintiff went on disability leave.

* As of January 14, 2005, when Plaintiff went on disability leave, she had not yet attempted to perform her newly assigned duties. That is, she had not yet began working as a marketing operations specialist.

* Plaintiff remained on disability leave for approximately 22 months, receiving disability benefits through Defendant from January 2005 until October 2006.

* Plaintiff was released by her doctors to return to work in October 2006, with a recommendation that she "be assigned a different role in a different department than where she was previously placed." Doc. 16-6. Plaintiff's physician also suggested that part-time work was preferable, but that Plaintiff "is capable of determining if part or full-time employment is optimal for her health." Id.

* When her disability leave ended in October 2006, Plaintiff was given the opportunity to return to work in her new marketing specialist position.

* According to Defendant, the marketing specialist position, to which Plaintiff was assigned prior to her disability leave,

reported to Chris Stadler, not Julie Walker (her former supervisor).

* Defendant had no part-time positions available in its Fayetteville, Arkansas operations in October 2006.

* According to Defendant, it had no other open positions for which Plaintiff was qualified in its Fayetteville, Arkansas office when Plaintiff returned to work in October 2006.

* Plaintiff indicated an interest in a customer team logistics coordinator position. According to Defendant, that position was not open in October 2006 when Plaintiff was released by her doctors to return to work.

* Effective October 2, 2006, Plaintiff resigned her employment with Defendant and accepted severance benefits rather than work in the marketing specialist position.

4. ACRA creates a civil cause of action against employers who discriminate against an otherwise qualified person on the basis of any sensory, mental, or physical disability. Ark. Code Ann. § 16-123-107(a)-(c). To establish a prima facie case of disability discrimination under ACRA, a claimant must show that she (1) has a disability within the meaning of the Act, (2) is able to perform the essential functions of her job, with or without reasonable accommodation, and (3) suffered an adverse

employment action as a result of her disability.[1] <u>Duty v. Norton-Alcoa Proppants</u>, 293 F.3d 481, 490 (8th Cir. 2002).   In its motion for summary judgment, Defendant assumes that Plaintiff is disabled.   Defendant contends, however, that Plaintiff has not made a sufficient showing on the remaining elements of her prima facie discrimination claim.

5.   As to the second element of Plaintiff's prima facie case, Defendant asserts that there is no evidence to support Plaintiff's claim that Defendant failed to reasonably accommodate her disability.   Defendant argues that, while it did not have a duty to reasonably accommodate Plaintiff's disability (as she did not satisfy the prerequisites of her new marketing position), it nevertheless did.   Specifically, Defendant contends that the marketing specialist position, to which Plaintiff was assigned immediately prior to the onset of her mental disability, was a reasonable accommodation because the position was supervised by Chris Stadler – not Julie Walker.   Plaintiff has stated that the

_____

[1]

    When reviewing a disability claim under ACRA, the Court applies the same principles employed in analyzing claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 <i>et seq</i>. <u>See</u> Ark. Code Ann. § 16-123-105(c); <u>Duty v. Norton-Alcoa Proppants</u>, 293 F.3d 481, 490 (8th Cir. 2002) ("we analyze a disability claim presented under the ACRA using the same principles employed in analyzing claims under the Americans with Disabilities Act"); <u>Greer v. Emerson Electric Co.</u>, 185 F.3d 917, 920-21 (8th Cir. 1999) (applying federal ADA analysis to disability discrimination claim brought under ACRA).

actions of Walker in and related to the January 10th meeting were the direct cause of her disability.  Doc. 22 at 12.  As such, Defendant argues that Plaintiff's new job properly addressed and accommodated her disability because she would not be required to work with Walker.  In response, Plaintiff asserts that she should have been offered another position outside of the marketing department as a reasonable accommodation.

The determination of whether a claimant was able to perform the essential functions of her job involves a two-part inquiry: (1) whether the individual meets the necessary prerequisites of her job, such as education, experience, training, and the like;[2] and (2) whether the individual can perform the essential job functions, with or without *reasonable accommodation*.  Cravens v. Blue Cross and Blue Shield of Kansas City, 214 F.3d 1011, 1016 (8th Cir. 2000) (emphasis added).  Plaintiff does not contend that she could perform the essential functions of her job without

---

[2]

Note that Defendant contends that Plaintiff has failed to proffer any evidence that she met the necessary prerequisites of her new marketing position.  Admittedly, Plaintiff was apprehensive about assuming this role and was worried that she lacked the skills necessary to satisfy the technical duties it would involve.  However, Plaintiff points out that, as she never worked in this new position, it cannot be said that she "failed at it."  Moreover, Plaintiff had been training for this role and, thus, had some foundation for at least attempting this job.

reasonable accommodation.   Thus, the relevant inquiry in this case is whether she could have performed with reasonable accommodation.   An employer only must reasonably accommodate the limitations resulting from the disability.   Wood v. Crown Redi-Mix, Inc., 330 F.3d 682, 687 (8th Cir. 2003).   The prospect of reassignment, as a potential reasonable accommodation, does not even arise unless "accommodation within the individual's current position would pose an *undue hardship*."   Cravens, 214 F.3d at 1019 (emphasis added).   In that respect, reassignment is an accommodation "of last resort." Id. See Aka v. Washington Hosp. Center, 156 F.3d 1284, 1301 (D.C. Cir. 1998) (en banc) (recognizing reassignment "as an option to be considered only after other efforts at accommodation have failed").

Reviewing the deposition testimony proffered by both parties, it is clear that Chris Stadler would be Plaintiff's new supervisor and that Stadler himself did not report to Walker. Doc. 16-4 at 31-32; Doc. 16-5 at 34; Doc. 19 at 7.   Accordingly, Walker would not manage Plaintiff's daily activities, conduct her salary evaluations, or otherwise directly impact Plaintiff's success in the marketing specialist position. Doc. 16-5 at 34. Thus, the Court does not believe that the position of marketing specialist would pose an undue hardship on Plaintiff such that

9

Defendant was required to consider reassignment in another department as a reasonable accommodation. While Plaintiff's assignment to this position was never well received by Plaintiff, an employer is not required to provide a disabled employee with an accommodation that is ideal from the employee's perspective, only an accommodation that is *reasonable*. <u>Huber v. Wal-Mart Stores, Inc.</u>, 486 F.3d 480, 484 (8th Cir. 2007). <u>See also Kennedy v. Dresser Rand Co.</u>, 193 F.3d 120, 122-23 (2d Cir. 1999) (presuming that a request to change supervisors is unreasonable). Thus, viewing all evidence in the light most favorable to Plaintiff, the Court finds that she has failed to set forth evidence supporting her contention that returning her to employment in the marketing specialist position was a failure to reasonably accommodate her mental disability.

Further, as Plaintiff did not attempt to work in her newly assigned job for even a day, she has no evidence of the working conditions in that position. Thus, Plaintiff cannot show that the conditions of that job were so intolerable that she was effectively *forced* to resign. Accordingly, the Court finds that there is no genuine evidence from which one could conclude that Plaintiff was constructively discharged. <u>See West v. Marion Merrell Dow, Inc.</u>, 54 F.3d 493, 497 (8th Cir. 1995) (holding that

10

an employee is constructively discharged "when an employer deliberately renders the employee's working conditions intolerable and thus forces her to quit her job."); Johnson v. Bunny Bread Co., 646 F.2d 1250, 1256 (8th Cir. 1981) ("An employee may not be unreasonably sensitive to his working environment. A constructive discharge arises only when a reasonable person would find conditions intolerable."). Simply stated, Plaintiff was offered a reasonable accommodation for her mental disability but she chose not to accept it.

IT IS, **THEREFORE, ORDERED** that Defendant Procter & Gamble Company, LLC's Motion for Summary Judgment (document #14) should be, and it hereby is, **GRANTED** and judgment in favor of Procter & Gamble Company, LLC will be entered by separate document filed concurrently herewith.

IT IS SO ORDERED.

> **/s/ Jimm Larry Hendren**
> **JIMM LARRY HENDREN**
> **UNITED STATES DISTRICT JUDGE**

11